UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **TODD C. BANK,** Plaintiff, <br><br> - against - <br><br> **VERDE ENERGY USA, INC.,** Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> 19-cv-01472 (AMD) (LB) |

**ANN M. DONNELLY,** United States District Judge:

On March 14, 2019, the plaintiff filed this action against Verde Energy USA, Inc. ("Verde") individually and on behalf of a putative class alleging that the defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the New York General Business Law § 399-p by making unsolicited telemarketing calls.  The parties quickly agreed to settle the matter and entered into an agreement under which the plaintiff released "any and all claims" it had against Verde "as of" the effective date of the settlement in exchange for a fixed sum.  The plaintiff agreed to dismiss this litigation when he received payment.  The plaintiff alleges that on March 26, 2019, the date the agreement went into effect, he received another unsolicited telemarketing call from the defendant.  The next day, March 27, 2019, the plaintiff received the settlement payment but did not dismiss the action.  Instead, he filed an amended complaint on March 29, 2019 (ECF No. 6), and kept the settlement payment.  The defendant answered and counterclaimed for breach of contract and specific performance of the settlement agreement.  (ECF No. 11.)  The defendant now moves for summary judgment to enforce the settlement agreement.  (ECF No. 26.)  For the reasons stated below, the defendant's motion is granted.

## BACKGROUND[1]

In his March 14, 2019 complaint, the plaintiff alleged that he received an unsolicited, automatically dialed, telemarketing call from the defendant on his residential phone on December 4, 2018. (ECF No. 1 ¶ 33.) Less than two weeks later, on March 26, 2019, the plaintiff entered into a Confidential Settlement and Release Agreement (the "Agreement") with the defendant. (ECF No. 29-3.) The parties agreed that:

> For and in consideration of the payment set forth in Section 3 of this Agreement, Bank for himself and on behalf of his heirs, spouse, children, executors, administrators, successors, assigns, beneficiaries, agents, representatives and any other persons in privity with Bank, *irrevocably, unconditionally, knowingly and voluntarily releases and forever discharges Verde Energy from and against any and all claims and causes of action that Bank individually alleged or could have individually alleged against Verde Energy before the execution of this Agreement and from any and all claims and causes of action, of any nature, known and unknown, past and present, foreseen and unforeseen, that Bank has or might have against Verde Energy as of the date of this Agreement*, including but not limited to any asserted or unasserted claims arising under any federal, state, or local telephone-communications statute, regulation, or rule, including, but not limited to, the federal Telephone Consumer Protection Act, 47 U.S.C. Section 227(b )(1 )(B), and New York State General Business Law Section 399-p, or any statutes, laws, regulations, or rules of any other State of the United States that address telephone calls that, upon being answered, play an artificial or prerecorded voice to deliver a message or are otherwise made or received without consent.

(Ag. ¶ 2 (emphasis added).)

The parties agreed that the effective date of the Agreement would be:

> . . . the date on which the last Party affixes such Party's signature hereto, provided that, within five (5) calendar days from the date on which the first Party affixes such Party's signature hereto, the last Party to have affixed such Party's signature hereto transmits the fully signed Agreement, or a copy of the Agreement containing the last Party's signature, to the Party that had first signed the Agreement.

---

[1] Unless otherwise noted, the factual background is based on my review of the entire record, including the parties' 56.1 statements.

(Ag. ¶ 1.) As a condition for accepting the settlement money, the plaintiff agreed that he would "dismiss the Litigation with prejudice, with each Party bearing its own costs and attorney's fees." (Ag. ¶ 7.)

The plaintiff signed the Agreement on March 23, 2019, and the defendant signed and returned the Agreement to the plaintiff on March 26, 2019. (ECF No. 28, Defendant's Rule 56.1 Statement ("Def. 56.1") ¶¶ 11, 13, 14; ECF No. 33-1, Plaintiff's Rule 56.1 Response ("Pl. 56.1") ¶¶ 11, 13, 14.) Both parties agree that March 26, 2019 is the effective date of the Agreement. (Def. 56.1 ¶ 15; ECF No. 35, Oct. 29, 2019 Conference Transcript ("Oct. 29 Tr.") 3:10-12.)

The plaintiff alleges that on the same day—March 26, 2019—he received another unsolicited call from the defendant. (ECF No. 6 ¶ 39; Oct. 29 Tr. 3:13-14.) He tried to rescind the settlement (*see* ECF No. 33 at 4), but the defendant had already wired the settlement funds to the plaintiff's account (*id.* at 6).

The plaintiff received the settlement amount via wire transfer on March 27, 2019. (Def. 56.1 ¶ 18; Pl. 56.1 ¶ 18.) Although he had agreed to dismiss the litigation as a condition of accepting the settlement money, the plaintiff instead filed an amended complaint on March 29, 2019; he dropped the December 4, 2018 claims and added claims about the March 26, 2019 call. (ECF No. 6 ¶ 39; Def. 56.1 ¶ 31; Pl. 56.1 ¶ 31.)

The defendant sent the plaintiff a cease and desist letter on April 1, 2019, demanding that he dismiss the litigation or return the settlement funds. (Def. 56.1 ¶ 35; Pl. 56.1 ¶ 35.) The plaintiff did neither. (Def. 56.1 ¶¶ 25, 30; Pl. 56.1 ¶ 25; Oct. 29 Tr. 2:21-24, 3:18-20.) Instead, he filed a notice of voluntary dismissal which "dismissed with prejudice" the portion of the original complaint related to the December 2018 call. (ECF No. 7; Def. 56.1 ¶ 36; Pl. 56.1 ¶ 36.)

The defendant answered the amended complaint and brought a counterclaim against the plaintiff for breach of contract and specific performance of the Agreement. (ECF No. 11.)

The defendant moved for a pre-discovery summary judgment, arguing that the plaintiff released all claims in the amended complaint when he executed the Agreement and accepted the settlement funds, and that the plaintiff breached the Agreement by not dismissing the litigation when he received the settlement funds. (ECF No. 27 at 5.) The defendant seeks specific performance of the Agreement—dismissal of the litigation—and attorneys' fees and costs to enforce the Agreement. (*Id.*)

The plaintiff responds that the alleged March 26, 2019 phone call falls outside of the terms of the Agreement, and that the "*as of* the date of this Agreement" language includes any claims that the plaintiff had against the defendant up to, but not including, March 26, 2019. (ECF No. 33-2 at 5-12; Oct. 29 Tr. 7:3-9.) The plaintiff also argues that he did not breach the Agreement when he kept the settlement money and refused to dismiss the litigation; he reasons that he kept his part of the bargain because he dismissed the claims covered by the Agreement— those related to the December 4, 2018 call. (ECF No. 33-2 at 12; Oct. 29 Tr. 6:7-13.)

## LEGAL STANDARDS

Summary judgment is appropriate when the submissions of the parties, taken together, show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). The movant has the initial "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.

4

1997). Once the moving party has met its burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)).

## DISCUSSION

Under New York law, a court interpreting a contract is "to give effect to the intent of the parties as revealed by the language they chose to use." *Bolt Elec., Inc. v. City of New York*, 223 F.3d 146, 150 (2d Cir. 2000); *see also Wong v. New York Times Co.,* 297 A.D.2d 544, 547 (1st Dep't 2002) ("A contract should be construed in accordance with the parties' purpose [and] a fair and reasonable interpretation, consistent with that purpose, must guide the courts in enforcing the agreement.").[2] "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002). The question for the court on a motion for summary judgment in a contract case is "whether the contract is unambiguous with respect to the question disputed by the parties." *Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)). The court considers extrinsic evidence only if the contract is ambiguous. *Greenfield*, 98 N.Y.2d at 569.

"Where a contract is unambiguous, that is, where its words convey a definite and precise meaning upon which reasonable minds could not differ, its interpretation can be determined as a matter of law." *Bolt Elec.*, 223 F.3d at 150. On the other hand, if contractual language is "ambiguous and subject to varying reasonable interpretations," the parties' intent "becomes an

---

[2] The Agreement is governed by New York law. (Ag. ¶ 9.)

5

issue of fact and summary judgment is inappropriate." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)).  A contract is ambiguous if "more than one meaning may reasonably be ascribed to the language used." *Id*.  "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation, unless each is a 'reasonable' interpretation." *Law Debenture*, 595 F.3d at 467 (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)) (internal quotations and citations omitted).  Therefore, "the court should not find the contract ambiguous where the interpretation urged by one party would 'strain [ ] the contract language beyond its reasonable and ordinary meaning.'" *Id.* (quoting *Bethlehem Steel Co. v. Turner Constr. Co.,* 2 N.Y.2d 456, 459 (1957)).

**I.     The Settlement Agreement Covers the Alleged March 26, 2019 Call**

The Agreement's release provision provides, in relevant part, as follows: "For and in consideration of the payment set forth in Section 3 of this Agreement," the plaintiff "irrevocably, unconditionally, knowingly and voluntarily releases and forever discharges Verde Energy from and against any and all claims and causes of action that Bank individually alleged or could have individually alleged against Verde Energy *before the execution of this Agreement and* from any and all claims and causes of action, of any nature, known and unknown, past and present, foreseen and unforeseen, that Bank has or might have against Verde Energy *as of the date of this Agreement . . . .*" (Ag. ¶ 2.)  A plain, common sense reading of this provision invites one reasonable interpretation—that "as of [March 26, 2019]" includes claims that existed on March 26, 2019.

As explained above, a provision does not become ambiguous simply because the parties offer alternative interpretations.  *Law Debenture*, 595 F.3d at 467.  "Ambiguous language is 'that

6

which is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Palmieri*, 445 F.3d at 191 (quoting *Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 673 (2d Cir. 1997)).  The plaintiff's interpretation of the release provision is not reasonable.  It is flatly inconsistent with the standard usage of the term "as of" and would render some of the language of the provision superfluous.  *See Walker v. Thompson*, 404 F. Supp. 3d 819, 825 (S.D.N.Y. 2019) (quoting *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992)) ("Under New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.").

       The parties agree that the effective date of the Agreement is March 26, 2019, but proffer competing interpretations of the Agreement's release provision at Section 2.  The defendant argues that the phrase "as of the date of the Agreement" covers all claims the plaintiff "has or had" before and including March 26, 2019.  (ECF No. 27 at 9.)  According to the plaintiff, "as of" March 26, 2019, includes all claims he had before 12:01 a.m. on March 26, 2019.  (ECF No. 33-2 at 6; Oct. 29 Tr. 7:3-9.)  In other words, the parties dispute whether the effective date of the Agreement—March 26, 2019—marks the end date of the released claims, or the date upon which new, unreleased claims may begin to accrue.

       Although the phrase "as of" can be used to delineate events occurring in either the past or the future, suggesting either the beginning or the end, the parties appear to agree that, in this case, "as of" is backward-looking and marks the ending point of events—actionable claims against the defendant—that the plaintiff has upon acceptance of Agreement.  (ECF No. 33-2 at 6; ECF No. 34 at 2.)  Indeed, the provision itself supports a backward-looking meaning of the

7

phrase, releasing claims "before the execution of this Agreement," "past and present," and "as of the date of this agreement." (Ag. ¶ 2.)

The plaintiff asks the Court to interpret "as of the date of the agreement" to mean "up until, but not including" that date. This is supported neither by common usage nor common sense. The phrase "as of" is generally understood to include the date in question.[3] Moreover, because the contract also specifies that the plaintiff is releasing any claims that he had "before the execution of this Agreement," as well as any claims he had or has "as of the date of the Agreement," the plaintiff's interpretation renders the "as of" phrasing superfluous; it merely repeats the intention of the previous phrase—that the plaintiff releases all claims he had before the date of the Agreement. The phrase "as of" extends the release to include not only claims that existed before the date of the agreement, but on the date of the agreement as well. Reading the entire provision, the only reasonable interpretation of "as of the date of the agreement" must be "before and including" the date of the agreement. *See Walker*, 404 F. Supp. 3d at 825 (quoting *Galli*, 973 F.2d at 149) ("[A]n interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect.").

In any event, the plaintiff's interpretation fails as a matter of law. "Although generally interpretation of ambiguous contract language is a question of fact to be resolved by the factfinder, 'the court may resolve ambiguity in contractual language as a matter of law if the

---

[3] Merriam-Webster's Dictionary defines "as of" to mean "on, at, from—used to indicate a time or date at which something begins or ends." https://www.merriam-webster.com/dictionary/as%20of (last visited Sept. 4, 2020). The American Heritage Dictionary defines "as of" to mean "on" or "at." https://ahdictionary.com/word/search.html?q=as+of (last visited Sept. 4, 2020). The Oxford English Dictionary defines "as of" to mean "as things stood on (a date)" or "reckoning from; from, after." https://www.oed.com/view/Entry/11307?redirectedFrom=as+of#eid194115997 (last visited Sept. 4, 2020). "Accordingly, the only reasonable interpretation of the contracts is that the date contained in the 'as of' clause identifies the moment at which the promised fact will exist." *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 664-65 (2d Cir. 2016).

8

evidence presented about the parties' intended meaning [is] so one-sided that no reasonable person could decide the contrary.'" *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 232 F.3d 153, 158 (2d Cir. 2000) (quoting *3Com Corp. v. Banco do Brasil, S.A.,* 171 F.3d 739, 746-47 (2d Cir. 1999)) (internal citations omitted). In other words, summary judgment is appropriate "if the contractual language is ambiguous but 'the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law.'" *RCJV Holdings, Inc. v. Collado Ryerson, S.A. de C.V.*, 18 F. Supp. 3d 534, 541–42 (S.D.N.Y. 2014) (quoting *Shepley v. New Coleman Holdings Inc.*, 174 F.3d 65, 72 n.5 (2d Cir.1999)).

The plaintiff, although appearing *pro se*, is an attorney with significant experience in this area of law and no stranger to drafting agreements such as this one. *See Capogrosso v. Gelbstein*, No. 18-CV-2710, 2019 WL 6406444, at *5 (E.D.N.Y. Jan. 30, 2019) (a *pro se* attorney "is not entitled to the solicitude afforded to *pro se* litigants"), *report and recommendation adopted*, 2019 WL 4686448 (E.D.N.Y. Sept. 25, 2019). The evidence suggests that the plaintiff took an active role in drafting the Agreement. (ECF No. 29 ¶ 7; Oct. 29 Tr. 5:15-21, 11:4-13, 15:11-16.) Although this fact should not be used against the plaintiff (*see* Ag. ¶ 15), it does demonstrate that he is a sophisticated party who engaged in arms-length negotiation and understood the language in the Agreement.

The record demonstrates that the plaintiff understood the Agreement to include March 26, 2019 in the release. The plaintiff wrote a letter to the defendant's counsel on the evening of March 26, 2019, after he received the alleged unsolicited call from the defendant, in which he sought to rescind the agreement due to a "material change in circumstance," *i.e.* the alleged phone call. (ECF No. 33 at 4.) If the plaintiff truly believed at that time that the settlement

9

agreement would not preclude a claim for that March 26, 2019 call, there would be no need to withdraw his consent to the Agreement. Instead, he could have dismissed the pending action and brought a new lawsuit against the defendants alleging new violations as a result of the March 26, 2019 call. The fact that he tried to rescind the Agreement is clear evidence that he knew that the release provision covered the March 26 call. The plaintiff submits no other evidence to support his interpretation of the release provision. *See Compagnie Financiere de CIC et de L'Union Europeenne*, 232 F.3d at 158 ("A court may also grant summary judgment regarding the interpretation of ambiguous language if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language.").

Based on the language of the Agreement, the plaintiff released any claim he had regarding the March 26, 2019 call when he accepted the settlement funds. Accordingly, the defendant's motion for summary judgment as to the claims in the Amended Complaint is granted.

**II.       Bank Breached the Settlement Agreement by Refusing to Dismiss this Action**

The defendant also seeks summary judgment on its counterclaims for breach of contract and specific performance. (ECF No. 27 at 17.) It argues that the Agreement required the plaintiff to dismiss this action upon receipt of the settlement funds, and that he breached the Agreement by continuing to litigate this action. (*Id.* at 16-17.)

Section 7 of the Agreement provides: "Upon Verde Energy's payment as described in Section 3, Bank will dismiss the Litigation with prejudice, with each Party bearing its own costs and attorney's fees." (Ag. ¶ 7.) The introductory section of the Agreement defines the "Litigation" as "a lawsuit titled *Todd C. Bank, Individually and on Behalf of All Others Similarly Situated v. Verde Energy USA, Inc.,* Case 1:19-cv-01472 *("Bank v. Verde Energy"* or the

10

"Litigation"), [that] is pending in the United States District Court for the Eastern District of New York."  (Ag. at 1.)

The plaintiff concedes that he received the settlement money described in Section 3 on March 27, 2019, and that he kept it.  (Def. 56.1 ¶¶ 18, 25; Pl. 56.1 ¶¶ 18, 25.)  Nevertheless, he maintains that he did not breach the Agreement because he dismissed the settled claims with prejudice.  (ECF No. 33-2 at 12.)  He explains that the phrase "dismiss litigation with (or without) prejudice" is a common usage in settlement agreements, but that only claims can be dismissed with prejudice.  (*Id.*)  He argues that he cannot dismiss the entire litigation "with prejudice" without impairing the rights of the putative class; he can only dismiss his individual claims with prejudice.  (*Id.*)

It is true that the plaintiff can dismiss only his individual claims with prejudice.  Equally true, however, is that the practical effect of a dismissal with prejudice in an action like this one, where the putative class has not been certified, would be to close the case.  *See Jackson v. Caribbean Cruise Line, Inc.*, No. 14-CV-02485, 2017 WL 9482238, at *3 (E.D.N.Y. Jan. 21, 2017) (because the Court did not certify the putative class, it had no jurisdiction over the class claims, and therefore, "once the Court granted the [named] [p]laintiff's motion to dismiss his claim, the case was closed"); *see also Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 n.22 (2d Cir. 2013) (quoting *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002)) ("[U]ntil certification, the jurisdiction of the district court depends upon its having jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until certification because until certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs.").  By dismissing his individual claims in the complaint with prejudice, the plaintiff would have, in effect,

11

dismissed the litigation. Amending the complaint in this situation serves only to prolong an action that would otherwise be closed.

The plaintiff's theory that his action puts the parties in the same place as they would be had he dismissed this litigation and brought a new action misses the point. Section 7 of the Agreement specifically requires dismissal of "the Litigation," and the Agreement defines "the Litigation" as "a lawsuit titled *Todd C. Bank, Individually and on Behalf of All Others Similarly Situated v. Verde Energy USA, Inc.*, Case 1:19-cv-01472." This language is clear and unambiguous and must be enforced according to its terms. *Ashwood Capital, Inc. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 7 (1st Dep't 2012). "By ignoring the plain language of the contract, [the] plaintiff effectively rewrites the bargain that was struck." *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 163 (1990). The plaintiff agreed to dismiss the Litigation upon receipt of payment, but failed to do so. The defendant is therefore entitled to summary judgment on its counterclaim for breach of contract.

### III.   Verde Is Not Entitled to Recover Attorneys' Fees

Under New York law, the prevailing party in a breach of contract action may not collect attorneys' fees from the losing party "unless such award is authorized by agreement between the parties, statute or court rule." *TAG 380, LLC v. ComMet 380, Inc.*, 10 N.Y.3d 507, 515 (2008). Authorization of attorneys' fees must be "unequivocal"; courts "should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is unmistakably clear from the language of the contract." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) (quoting *Hooper Assocs. v. AGS Computers*, 74 N.Y.2d 487, 492 (1989)) (internal quotations omitted). New York courts have recognized a few exceptions to this general rule, including: (1) where the defendant acts

12

"with actual malice" and "intentionally seeks to inflict economic injury on plaintiff by forcing him to engage legal counsel"; (2) "where a breach of contract has caused a party to maintain or defend a suit against a third person"; (3) "in an action by an insured against its insurer to require the insurer to defend a claim against it when the insurer seeks to disclaim coverage"; and (4) "as a consequence of frivolous conduct in litigation." *Alexsam, Inc. v. Mastercard Int'l Inc.*, No. 15-CV-2799, 2018 WL 7063137, at *7 (E.D.N.Y. Oct. 16, 2018) (quoting *Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 242 (S.D.N.Y. 2011)) (internal quotations and alterations omitted), *report and recommendation adopted*, 2020 WL 3286785 (E.D.N.Y. June 17, 2020).

The Agreement does not provide for an award of attorneys' fees to the prevailing party in an action to enforce the Agreement. The defendant says that the plaintiff should pay its attorneys' fees because he acted "contumaciously" and "deprived Verde of 'a clear legal entitlement' when he declined to dismiss this Litigation and release Verde from any claims he may have in the alleged March 26, 2019 call." (ECF No. 34 at 5 (quoting *Check-Mate Indus., Inc. v. Say Assocs.*, 104 A.D.2d 392, 393 (2d Dep't 1984)).) In other words, the defendant says that the plaintiff acted in bad faith. *See Petrello v. White*, No. 01-CV-3082, 2012 WL 2803759, at *4 (E.D.N.Y. July 10, 2012).

Although the plaintiff's interpretation of the Agreement's release provision was strained, hyper-technical and obviously wrong, the evidence does not support the defendant's claim that he acted in bad faith. *See Petrello*, 2012 WL 2803759, at *3 (citing examples of bad faith conduct). He has not abused the litigation process or caused the defendant to incur damages beyond what it would be expected to encounter in a typical action to enforce the settlement agreement. *See id*. (citing *Park South Assoc. v. Essebag,* 113 Misc.2d 1026, 1028 (Civ. Ct., N.Y.

13

County, May 19, 1982) and *Check-Mate Indus.*, 104 A.D.2d at 393). Absent an express provision in the Agreement stating otherwise, the defendant is not entitled to recover its attorney fees in this action.

## IV.     The Settlement Agreement Will Not be Filed Under Seal

Finally, the parties request that the Agreement, which the defendant attached to its summary judgment motion, be filed under seal pursuant to the confidentiality provision of the Agreement. (ECF Nos. 30-32.) Because there is a presumptive right of public access to judicial documents, a court "must carefully and skeptically review sealing requests to [e]nsure that there really is an extraordinary circumstance or compelling need" to file a judicial document under seal. *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994). "[D]ocuments submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006). "A party may overcome the presumption of access by demonstrating that sealing will further other substantial interests such as a third party's personal privacy interests, the public's safety, or preservation of attorney-client privilege." *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017) (collecting cases).

Neither party has established any "substantial interest" that overcomes the presumption of public access to the Agreement. The confidentiality provision of the Agreement provides: "This section shall not apply to any action by either Party to enforce this Agreement." (Ag. ¶ 5.) The term "action," in this case, includes the defendant's counterclaim to enforce the Agreement. *See Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Pelella*, 350 F.3d 73, 81 (2d Cir. 2003) ("The word 'action,' without more, is arguably broad enough to encompass any

14

type of judicial proceeding, including counterclaims."); *accord* N.Y. U.C.C. Law § 1-201(1) ("'Action', in the sense of a judicial proceeding, includes recoupment, counterclaim, set-off, suit in equity, and any other proceeding in which rights are determined."). By the Agreement's plain language, neither sealing nor redaction of the Agreement is required in this case. The parties offer no other compelling reason to file the Agreement under seal. Therefore, the motion to seal the Agreement is denied.

## CONCLUSION

The defendant's motion for summary judgment is granted as to all claims alleged in the amended complaint as well as to the defendant's counterclaims for breach of contract and specific performance. The defendant's request for attorneys' fees is denied. The motion to seal the Agreement (ECF No. 30) is denied. The Clerk of Court is respectfully directed to enter judgment in favor of the defendant and close this action.

**SO ORDERED.**

                                                  s/Ann M. Donnelly
                                                  ANN M. DONNELLY
                                                  United States District Judge

Dated: Brooklyn, New York
       September 18, 2020